[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-14490
_____

D.C. Docket No. 1:17-cv-00253-MW-GRJ

AMANDA LAWSON-ROSS,
TRISTIAN BYRNE,

Plaintiffs - Appellants,

versus

GREAT LAKES HIGHER EDUCATION CORPORATION,

Defendant - Appellee.
_____

Appeal from the United States District Court
for the Northern District of Florida
_____

(April 10, 2020)

Before WILLIAM PRYOR and JILL PRYOR, Circuit Judges, and ROBRENO,[*] District Judge.

JILL PRYOR, Circuit Judge:

Plaintiffs Dr. Amanda Lawson-Ross and Tristian Byrne (the "Borrowers") each took out federal student loans to finance higher education. The Borrowers' federal student loans were serviced by defendant Great Lakes Higher Education Corporation. The Borrowers alleged that Great Lakes made affirmative misrepresentations to them and other borrowers that they were on track to have their student loans forgiven based on their public-service employment when, in fact, their loans were ineligible for the forgiveness program. The Borrowers sued Great Lakes, bringing a variety of claims under Florida law, including the Florida Consumer Collection Practices Act ("FCCPA"), Fla. Stat. § 559.55 *et seq*.

The district court ruled that the Borrowers' claims were preempted by a provision of the Higher Education Act of 1965, 20 U.S.C. §§ 1001 *et seq.* ("HEA"), which prohibits the application of state law disclosure requirements to loans made under federal student loan programs. 20 U.S.C. § 1098g. In this appeal, we must decide whether the HEA preempts state law claims alleging that student loan servicers made affirmative misrepresentations to borrowers regarding their eligibility for a federal program that forgives student loan balances. We hold

---

[*] Honorable Eduardo C. Robreno, United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

that the HEA—which expressly preempts state law disclosure requirements—does not preempt the Borrowers' claims here. We therefore vacate the district court's dismissal of the claims and remand for further proceedings.

## I.    STUDENT LOAN REGULATION

Congress enacted the HEA, the primary statute governing federal student loans, "to keep the college door open to all students of ability, regardless of socioeconomic background." *Rowe v. Educ. Credit Mgmt. Corp.*, 559 F.3d 1028, 1030 (9th Cir. 2009) (internal quotation marks omitted); *see also* 20 U.S.C. § 1070(a). To fulfill this goal of improving access to higher education, the HEA established the Federal Family Education Loan Program ("FFELP"). *See* 20 U.S.C. § 1071.

Under the FFELP, lenders used their own funds to make loans, known as FFEL loans, to students attending postsecondary institutions. These loans were guaranteed by private guarantors and reinsured by the federal government. *See id.* § 1078(a)-(c). Although the federal government did not directly fund these loans, it served as the ultimate guarantor of the loans through the reinsurance program.[1] Lenders for FFEL loans contracted with loan servicing companies to manage borrowers' repayment of the loans.

---

[1] In 2010, the government stopped reinsuring new FFEL loans. 20 U.S.C. § 1071(d).

In time, Congress shifted away from the FFELP to the William D. Ford Federal Direct Loan Program.  *See id.* §§ 1087a-1087j.  Under this program, the federal government itself served as the lender, directly providing the funds for student loans.  Because the federal government directly provided the funds for these loans, they aptly became known as "direct loans."  *Id.* § 1087a(b)(2).  The government contracted with non-government entities to service direct loans.

To encourage student loan recipients to enter and remain employed in public service jobs, Congress created the Public Service Loan Forgiveness Program ("PSLF" or the "PSLF Program"), to forgive direct loan balances for borrowers employed in government or not-for-profit organizations.  *See* College Cost Reduction and Access Act, Pub. L. No. 110-84 § 401, 121 Stat. 784, 800 (2007).  Under the PSLF Program, the federal government forgives outstanding student loan balances for borrowers who:  (1) made 120 payments on their loan after October 1, 2007; (2) made these payments on an eligible direct loan; (3) were on a qualifying repayment plan; and (4) were employed in public service at the time of the loan forgiveness and had been employed in public service during the period in which the 120 payments were made.  20 U.S.C. § 1087e(m)(1).

A key requirement of the PSLF Program is that the 120 payments must be made on an "eligible Federal Direct Loan."  *Id.* § 1087e(m).  Congress defined an "eligible Federal Direct Loan" to include "a Federal Direct Stafford Loan, Federal

4

Direct PLUS Loan, or Federal Direct Unsubsidized Stafford Loan, or a Federal Direct Consolidation Loan." *Id.* § 1087e(m)(3)(A). Borrowers with other types of federal student loan debt—including FFEL loans—are ineligible for the PSLF Program. Borrowers with FFEL loans are not entirely out of luck, however. They may consolidate their loans into a Federal Direct Consolidation Loan to become eligible. *See id.* §§ 1078-3(b)(5); 1087e(m)(3)(A). But any payments they made before consolidation do not count toward the 120 payments required for the program.

The HEA also imposes obligations on student loan lenders and loan servicers.[2] Most relevant to the Borrowers' claims here are the requirements that lenders and servicers make various disclosures to borrowers. *See id.* § 1083. Although the HEA does not define the term "disclosure," it specifies the information that must be disclosed and when the disclosures must occur. *Id.* § 1083(a)-(b), (e). The HEA mandates disclosures at or during particular points in time, including: (1) at or before the disbursement of loan proceeds (19 required disclosures); (2) at or before the start of repayment (13 required disclosures); and (3) periodically during repayment. *See id.* § 1083(a)-(b), (e). Certain information must be provided with each bill or statement sent to the borrower, including the

---

[2] Direct loans are subject to the "same terms, conditions, and benefits" as loans issued under the FFELP. 20 U.S.C. § 1087e(a)(1).

5

original principal amount of the loan, the borrower's current outstanding loan balance, the loan's interest rate, and the total amount the borrower has paid in interest and in the aggregate. *Id.* § 1083(e)(1). Additional information must be disclosed when the borrower either has provided notice that she is having difficulty making payments or is 60 days delinquent in making payments. *See id.* § 1083(e)(2)-(3).

Along with imposing these disclosure requirements, the HEA expressly preempts the imposition of state law disclosure requirements. Section 1098g, entitled "Exemption from State disclosure requirements," provides:

> Loans made, insured, or guaranteed pursuant to a program authorized by Title IV of the [HEA] . . . shall not be subject to any disclosure requirements of any State law.

*Id.* § 1098g.

## II.    BACKGROUND

### A.    Factual Background

Defendant-appellee Great Lakes services the Borrowers' federal student loans. The Borrowers allege that Great Lakes representatives told them they were eligible for forgiveness of their loans through the PSLF Program, and only later did

6

they discover they were not eligible—after they had already made payments that could not then be counted toward the PSLF Program.[3]

Plaintiff-appellant Lawson-Ross has a master's degree and a doctoral degree in counseling psychology.  She borrowed to finance both degrees.  The majority of her loans were not Federal Direct Loans.[4]  Since completing her doctorate, Lawson-Ross has been employed at the University of Florida working in its Counseling and Wellness Center and also at Florida Gulf Coast University's Counseling and Psychological Services Office.  Given this work in public service, Lawson-Ross expected that after 10 years of working her student loans would be forgiven through the PSLF Program.

Once she began repaying her student loans in 2007, Lawson-Ross regularly contacted Great Lakes to "ensur[e] that she was on track to receive the benefits of the PSLF."  Doc. 24 at ¶ 41.[5]  During her communications with Great Lakes representatives, she inquired about her eligibility for the PSLF Program, and the representatives "repeatedly and explicitly" told her that she was "on track to

---

[3] We describe the facts as alleged in the Borrowers' complaint.  In reviewing the grant of a motion to dismiss, we accept the well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff.  *See Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1335 (11th Cir. 2012).

[4] The complaint did not identify what the type of loans Lawson-Ross had; it alleged only that they were not Federal Direct Loans.

[5] Citations in the form "Doc. #" refer to the numbered entries on the district court's docket.

benefit [from] PSLF, *that her loans qualified under that program*, and that she would not need to complete any additional forms until her 10 years of public service was completed." *Id.* at ¶ 42 (emphasis added).

In July 2017, however—almost 10 years later—a Great Lakes representative told Lawson-Ross that she was ineligible for the PSLF Program. She was ineligible because most of her loans were not Federal Direct Loans—the only loans eligible for the PSLF Program. As a result, none of the payments she had made during those 10 years counted toward the PSLF Program. Had Lawson-Ross known that her loans were ineligible for the PSLF Program, she either could have made sure she was eligible for forgiveness under the PSLF Program (presumably by consolidating her loans) or undertaken a different career path.

Plaintiff-appellant Byrne graduated with an associate degree in criminal justice. She took out FFEL loans to help finance her education. Byrne learned about the PSLF Program while working for the Pinellas County Sheriff's Office. When she learned about the program, she reached out to Great Lakes to ask whether her job with the sheriff's office would qualify her for the program. A Great Lakes representative informed her that to qualify for the PSLF Program, she needed only to work full time in her current job, complete an application, have human resources fill out a form certifying her employment, and apply for income-

8

based payments. Great Lakes represented that once Byrne had made 120 payments on her student loans, the remainder of her loan balance would be forgiven.

Byrne followed Great Lakes's instructions. She submitted an application for loan forgiveness. After hearing nothing from Great Lakes, she submitted a second application. Several months later, Great Lakes told Byrne that she was ineligible for the PSLF Program because her loans were not Federal Direct Loans. If Great Lakes had not misinformed Byrne, she would have taken the steps necessary to ensure that she was eligible for the PSLF Program.

As a federal student loan servicer, Great Lakes was responsible for collecting payments from borrowers, providing borrowers with repayment options, managing borrowers' student loan accounts, and communicating with borrowers about their loans. Great Lakes held itself out as an authority for advice about the best path to student loan repayment. It did so, the Borrowers alleged, by stating on its website, "You should never have to pay for student loan advice or services. Call us, instead. Our representatives have access to your latest student loan information and are trained to understand all of your options." *Id.* at ¶ 29.

The United States Department of Education ("DOE") also encouraged borrowers to consult their federal loan servicers regarding repayment and options for borrowers having trouble making their loan payments. The DOE made statements such as: "Work with your loan servicer to choose a federal student

9

repayment plan that's best for you;" "Your loan servicer will help you decide whether one of these plans is right for you;" "Always contact your loan servicer immediately if you are having trouble making your student loan payment;" and "Why pay for help with your federal student loans when your loan servicer will help you for FREE?  Contact your servicer to apply for income-driven repayment plans, student loan forgiveness, and more." *Id.* at ¶ 27.  Therefore, the Borrowers reasonably looked to Great Lakes for advice about the PSLF Program and relied on Great Lakes's representations.

**B.    Procedural History**

The Borrowers filed a complaint against Great Lakes alleging that it misrepresented that they were on track to benefit from the PSLF Program when they were not and that they were harmed by these misrepresentations.  They further alleged that Great Lakes had incentives to put its own interests ahead of the Borrowers whose loans it serviced so that it could continue to service the loans and benefit from the extra principal, fees, and interest that it would not otherwise have collected had the Borrowers been given correct information so that they could make their loans PSLF-eligible.

On behalf of a class of similarly situated borrowers, the Borrowers brought claims under Florida law for breach of fiduciary duty, negligence, unjust enrichment, breach of implied-in-law contract, and violation of the FCCPA.  *See*

10

Fla. Stat. § 559.72.[6]  The Borrowers Lawson-Ross and Byrne alleged that they and

the other class members spent years making payments that they believed, based on

Great Lakes's representations, qualified for the PSLF Program, only to find out

years later that none of their loan payments counted toward loan forgiveness.

Great Lakes moved to dismiss the case for failure to state a claim.  Among

other arguments, Great Lakes maintained that the Borrowers' claims were

expressly preempted under § 1098g of the HEA.  Invoking § 1098g's explicit

preemption of "any disclosure requirements of any State law," 20 U.S.C. § 1098g,

Great Lakes argued that the Borrowers' claims were based on alleged failures to

disclose information.  Allowing these state law claims to proceed, they contended,

would effectively impose additional disclosure requirements, in violation of

§ 1098g.

After Great Lakes filed its motion to dismiss, the Secretary of the DOE

issued a notice outlining the agency's position regarding federal preemption of

state law by the HEA.  *See* Federal Preemption and State Regulation of the

Department of Education's Federal Student Loans Programs and Federal Student

Loan Servicers, 83 Fed. Reg. 10619 (Mar. 12, 2018) (the "Notice").  In the Notice,

the Secretary announced that "Congress intended section 1098g to preempt any

---

[6] The FCCPA prohibits false representations regarding the character or status of a debt and forbids use of deceptive debt collection methods.  Fla. Stat. § 559.72.

11

State law requiring lenders to reveal facts or information not required by Federal law." *Id.* at 10621 (alteration adopted) (internal quotation marks omitted).[7] According to the Notice, state laws imposing "new prohibitions on misrepresentation or the omission of material information" ran afoul of § 1098g's express preemption provision. *Id.*

Great Lakes notified the district court that the Notice "squarely addresse[d] the preemption issue" in Great Lakes's favor. Doc. 30 at 3. The district court then directed the parties to file supplemental briefs regarding the Notice and whether the court should defer to it.

In its supplemental briefing, Great Lakes again argued that the Borrowers' claims were simply restyled nondisclosure claims that were expressly preempted. It further argued that even if the court were to accept that the Borrowers' claims were based on affirmative misrepresentations rather than failures to disclose, the claims nevertheless should be dismissed for failure to satisfy the heightened pleading standards of Rule 9(b) of the Federal Rules of Civil Procedure. Claims based on affirmative misrepresentation, Great Lakes contended, "sound in fraud"

---

[7] The Notice further explained that it "interprets disclosure requirements under section 1098g of the HEA to encompass informal or non-written communications to borrowers as well as reporting to third parties such as credit reporting bureaus." Notice, 83 Fed. Reg. at 10621 (internal quotation marks omitted).

and therefore must satisfy the requirements of Rule 9(b). Doc. 34 at 19–21 (internal quotation marks omitted).

The district court granted Great Lakes's motion to dismiss, concluding that the Borrowers' claims were expressly preempted by § 1098g. The court addressed only the preemption arguments. It construed Great Lakes's alleged misrepresentations as a "failure to provide accurate information," or "in other words . . . [a] disclosure." Doc. 44 at 8. Then, looking to *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944), the district court determined that the DOE's guidance in the Notice was entitled to deference and concluded that the HEA expressly preempted the Borrowers' Florida state law claims and granted the motion to dismiss.[8] The Borrowers appealed that decision, which we now review.

## III.   STANDARD OF REVIEW

We review *de novo* the district court's grant of a motion to dismiss for failure to state a claim. *See Snow v. DirecTV, Inc.*, 450 F.3d 1314, 1317 (11th Cir. 2006). We likewise review *de novo* whether federal law preempts a state law claim. *Graham v. R.J. Reynolds Tobacco Co.*, 857 F.3d 1169, 1181 (11th Cir. 2017) (en banc).

## IV.   DISCUSSION

---

[8] Because the district court concluded that the Borrowers' claims were preempted, it did not reach the issue of whether the complaints' allegations otherwise sufficed to state a claim for relief.

The Constitution's Supremacy Clause makes federal law "the supreme Law of the Land; . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const., art. VI, cl. 2. When applying the Supremacy Clause, we begin "with the assumption that the historic police powers of the States are not to be superseded by Federal Act unless that is the clear and manifest purpose of Congress." *Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 516 (1992) (alterations adopted) (internal quotation marks omitted). "The purpose of Congress is the ultimate touchstone" of preemption analysis. *Retail Clerks Int'l Ass'n, Local 1625 v. Schermerhorn*, 375 U.S. 96, 103 (1963). In determining Congress's purpose, we look to the "text and structure of the statute at issue." *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 664 (1993). Where Congress legislates in a field traditionally occupied by the states, the presumption against preemption "applies with particular force." *Altria Grp., Inc. v. Good*, 555 U.S. 70, 77 (2008).

Congress's intent to preempt state law may be stated expressly in a statute or implied by the statute's structure and purpose. *Jones v. Rath Packing Co.*, 430 U.S. 519, 525 (1977). Absent express preemption language, congressional intent to preempt state law will be implied where there is a "conflict with a congressional enactment," *Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525, 541 (2001), or where "the scheme of federal regulation is sufficiently comprehensive to make reasonable the inference that Congress left no room for supplementary state

14

regulation" in a particular area of law, *Hillsborough Cty. v. Automated Med. Labs., Inc.*, 471 U.S. 707, 713 (1985) (internal quotation marks omitted). These forms of implied preemption are known as conflict preemption and field preemption, respectively.

In this appeal we confront the question of whether the Borrowers' state law claims are preempted, expressly or otherwise, by the HEA. Our answer to the question is no. We divide our analysis into two parts. In Part A, we address why the Borrowers' claims are not expressly preempted by § 1098g of the HEA. In Part B, we explain why the Borrowers' claims are not preempted implicitly, either by conflict or field preemption.

## A.    The Borrowers' Claims Are Not Expressly Preempted.

We first consider whether the Borrowers' claims are preempted by express language in the HEA. The HEA includes various provisions that explicitly preempt certain areas of state law. *See, e.g.*, 20 U.S.C. §§ 1078(d) (state usury laws); 1091a(a)(2) (state statutes of limitations); 1091a(b)(2) (state law infancy defense). Section 1098g, entitled, "Exemption from State disclosure requirements," is one such express preemption provision. It provides:

> Loans made, insured, or guaranteed pursuant to a program authorized by Title IV of the [HEA] . . . shall not be subject to any disclosure requirements of any State law.

*Id.* § 1098g.

It is clear, and the parties do not contest, that § 1098g expressly preempts state laws requiring federal student loan servicers to make additional disclosures beyond what the HEA requires. The Borrowers' complaint attempts to impose state disclosure requirements on servicers, Great Lakes argues, because their affirmative misrepresentation claims, at their core, are based on a failure to disclose correct information. We reject Great Lakes's characterization of the Borrowers' claims and its argument that § 1098g so broadly preempts state law. We conclude that the precise language Congress used in § 1098g preempts only state law that imposes disclosure requirements; state law causes of action arising out of affirmative misrepresentations a servicer voluntarily made that did not concern the subject matter of required disclosures impose no "disclosure requirements."

Before we address Great Lakes's characterization of the Borrowers' claims, as an initial matter we must "identify the domain expressly pre-empted" by § 1098g. *Cipollone*, 505 U.S. at 517  To identify the domain expressly preempted by Congress, we read "the words of a statute . . . in their context and with a view to their place in the overall statutory scheme." *Home Depot U. S. A., Inc. v. Jackson*, 139 S. Ct. 1743, 1748 (2019) (internal quotation marks omitted). Section 1098g concerns "disclosure requirements," but the HEA does not define "disclosure requirements" or "disclosure." The HEA does, however, identify the disclosures it

16

requires. *See* 20 U.S.C. § 1083(a), (b), (e). Viewed in its statutory context, then, the term "disclosure requirements" refers to the HEA's requirements that certain information be communicated to borrowers during the various stages of a loan, as laid out in § 1083 of the statute. Thus, the domain § 1098g preempts is the type of disclosures to borrowers that § 1083 requires.

We now turn to the nature of the Borrowers' state law claims. We examine whether these claims are based on failures to disclose, as Great Lakes contends, such that allowing the claims to proceed would violate § 1098g. The Borrowers allege that Great Lakes made affirmative misrepresentations to them while they were in the repayment stage of their federal student loans. The most relevant part of the HEA is § 1083(e), which details the "[r]equired disclosures during repayment." *See id.* § 1083(e). Section 1083(e) principally requires the servicer to disclose information about the loan itself, including: the original principal amount of the loan, the borrower's current outstanding balance, the loan's interest rate, the fees the borrower has been charged, the total amount paid in interest on the loan, and the aggregate total amount the borrower has paid on the loan. *See id.* § 1083(e)(1). In addition, when a borrower is having difficulty making payments, the servicer must provide a description of available repayment plans, the requirements for forbearance on the loan, and the options to help the borrower avoid defaulting on the loan. *See id.* § 1083(e)(2).

17

Comparing these types of disclosures to the communications between Great Lakes and the Borrowers here, we find little to no similarity.  Although at first blush the subject of the communications at issue might appear to resemble a description of payment plans or options to prevent default, the Borrowers were not behind on payments or facing default.  Instead, they requested information about a loan forgiveness program for borrowers employed in public service jobs, specifically, whether they were in a position to meet that program's requirements.  Great Lakes's voluntary, personalized, affirmative misrepresentations in the form of advice about whether an individual borrower was on track to qualify for the PSLF Program was different in kind from any disclosure required by this subsection or any other provision of the HEA.  The Borrowers' claims therefore did not correspond with a failure to make a disclosure under the HEA.

In concluding that the Borrowers' affirmative misrepresentation claims are simply restyled failure-to-disclose claims and so allowing the claims to proceed would impose state law disclosure requirements on servicers in violation of § 1098g, the district court never considered what constitutes a disclosure under § 1083 or any other provision of the HEA.  Without reference to the HEA's identification of information required to be disclosed, the district court stated that "[c]laims that a servicer provided inaccurate information [are] no different than a claim that Great Lakes failed to make proper disclosures."  Doc. 44 at 9.  Great

18

Lakes contends that this position is supported by *Chae v. SLM Corp.*, 593 F.3d 936 (9th Cir. 2010).  We first explain why Great Lakes's characterization of the Borrowers' claims as failure-to-disclose claims is untenable and then explain why *Chae* fails to persuade us otherwise.

Taking a close look at the Borrowers' complaint, we see no allegation that Great Lakes failed to provide them with any information that it had a legal obligation to disclose.  Rather, the Borrowers alleged that when Great Lakes chose to provide them with information it was not required to disclose—about their eligibility for the PSLF Program—it gave false information.[9]  If instead the Borrowers had alleged that Great Lakes had a duty to inform them whether they qualified for the PSLF Program, such a claim might well be preempted.  But here, Great Lakes was not required to say anything about loan forgiveness.  It could have remained silent instead of giving the Borrowers advice.  Holding Great Lakes liable for offering false information would therefore neither impose nor equate to imposing on servicers a duty to disclose information.  It would simply require

---

[9] The Borrowers additionally argue that § 1083, read together with DOE regulations, suggests that Congress intended to draw a distinction between written "disclosures" and "other communications" between a borrower, on the one hand, and a lender or servicer, on the other, s*ee* 34 C.F.R. § 682.205(a)(4)(ii).  The Borrowers contend that this distinction leads to the conclusion that the HEA provides no "guidance regarding what loan servicers may or may not communicate in informal telephonic communications."  Appellants' Br. at 23.  Therefore, they argue, federal law does not preempt state law with respect to such communications.  Because we conclude that the affirmative misrepresentations Great Lakes allegedly made were not subject to disclosure requirements under the HEA, we need not address this argument.

19

Great Lakes and other servicers to speak truthfully when they choose to speak about a borrower's qualification for the PSLF Program or any other topic on which servicers have no duty to disclose.

We find support for this distinction between an affirmative misrepresentation and a failure to disclose in the law of torts. To succeed on a failure-to-disclose claim, the plaintiff must establish that there was a duty to speak and the duty was breached. *See Chiarella v. United States*, 445 U.S. 222, 228 (1980) ("[O]ne who fails to disclose material information . . . commits fraud only when he is under a duty to do so. And the duty to disclose arises when one party has information that the other party is entitled to know because of a fiduciary or other similar relation of trust and confidence between them" (alteration adopted) (internal quotations omitted)). In contrast, a claim alleging an affirmative misrepresentation does not rely on a duty to disclose. *See Nelson v. Great Lakes Educ. Loan Servs., Inc.*, 928 F.3d 639, 649 (7th Cir. 2019) ("The common law tort of fraud ordinarily requires a deliberately false statement of material fact. An omission or failure to disclose, on the other hand, will not support a common law fraud claim . . . ." (citations omitted)). Here, the Borrowers alleged no duty to disclose information about the Borrowers' eligibility for PSLF, only a duty to speak truthfully; we thus reject Great Lakes's characterization of the Borrowers' claims as failure-to-disclose claims.

20

We now address Great Lakes's argument that the Ninth Circuit's decision in *Chae* supports its characterization of the Borrowers' claims as restyled failure-to-disclose claims.[10]  Great Lakes argues that *Chae* is persuasive as a "nearly identical" case.  Appellee's Br. at 41.  At issue in *Chae* were state law claims challenging how a federal student loan servicer communicated its methods of calculating interest, assessing late fees, and setting the first repayment date.  *Chae*, 593 F.3d at 940–41.  The borrowers in *Chae* claimed, in part, that the servicer violated California's unfair competition law and Consumer Legal Remedies Act by failing to disclose key information about these methods in its billing statements and coupon books.[11]  *Id.* at 942.  The Ninth Circuit concluded that these

---

[10] Great Lakes also argues that the Borrowers' claims are similar to a fraudulent misrepresentation theory the Supreme Court held to be expressly preempted by § 5 of the federal Public Health Cigarette Smoking Act of 1969 ("PHCSA").  *Cipollone*, 505 U.S. at 510.  We disagree that the Borrowers' claims are analogous to the preempted fraudulent misrepresentation theory in *Cipollone*.  First, the preemption statute at issue in *Cipollone* contained broader, different language than § 1098g of the HEA.  Second, the Borrowers' affirmative misrepresentation claims are more like the second theory of fraudulent misrepresentation addressed in *Cipollone*.  The Court held in *Cipollone* that the plaintiffs' second theory of fraudulent misrepresentation was not preempted because it was based not on a duty related to smoking and health, the subject of the PHCSA, but "rather on a more general obligation[,] the duty not to deceive."  *Id.* at 528–29 (plurality opinion).  Similarly, the Borrowers' claims are based not on a duty to disclose but the duty not to deceive.  Thus, we are not persuaded by Great Lakes's argument that *Cipollone* leads to a contrary conclusion.

[11] The plaintiffs in *Chae* also brought claims against the servicer for breach of contract, unjust enrichment, breach of the implied covenant of good faith and fair dealing, and the use of fraudulent and deceptive practices apart from the billing statements.  *See Chae*, 593 F.3d at 943.  Because the Ninth Circuit held that these claims were not expressly preempted, we do not discuss them here.

misrepresentation claims were simply restyled nondisclosure claims that were expressly preempted by § 1098g. *Id.* at 943.

Importantly, these claims challenged how the servicer communicated information that the HEA required it to disclose. *Id.* at 942–43; *see Nelson*, 928 F.3d 649–50 ("The plaintiffs in *Chae* complained about the supposed failures to disclose key information in specific ways, such as loan terms and repayment requirements. Since the defendant was required to disclose that information by federal law and had disclosed it in ways permitted by federal law, the Ninth Circuit found that the plaintiffs were implicitly seeking to impose additional disclosure requirements under state law.") Here, however, the Borrowers made no claim that Great Lakes disclosed in a misleading manner information it was required to disclose; rather, they alleged that Great Lakes voluntarily provided information on a matter on which it was not required to disclose, and while doing so made affirmative misrepresentations. *Chae* does not persuade us that the Borrowers' claims are expressly preempted.

Without a doubt, § 1098g of the HEA expressly preempts a state law's imposition of disclosure requirements on federal student loan servicers, but the Borrowers do not allege that Great Lakes had a duty to disclose anything about the PSLF Program—and in fact it had no such duty. Section 1098g of the HEA does not expressly preempt the Borrowers' claims.

22

**B.    The Borrowers' Claims Are Not Otherwise Preempted.**

Having concluded that the Borrowers' claims are not expressly preempted, we next turn to Great Lakes's argument that the Borrowers' claims are preempted implicitly, either by the doctrine of conflict or of field preemption.[12]

### 1.  Conflict Preemption Does Not Apply to the Borrowers' Claims.

Even where state law is not expressly preempted, it may nevertheless be preempted where it "conflicts with federal law." *Cipollone*, 505 U.S. at 516. Conflict preemption can occur when (1) it is impossible for a party to comply with both state and federal law, or (2) the state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 373 (2000) (internal quotation marks omitted).  We conclude that conflict preemption does not apply here due to the general implication that arises when Congress has expressly preempted specific areas of state law: that it did not intend to preempt state law more broadly.  But even if the inference against preemption should not be drawn here, the Borrowers' claims present no conflict with federal law because we remain unconvinced that the purpose Great Lakes advances—uniformity for uniformity's sake—is in fact a goal of the HEA.

---

[12] The district court did not address conflict or field preemption; having concluded that the Borrowers' claims were expressly preempted, the court had no need to address implied preemption.

23

When Congress has explicitly addressed preemption in a statute, an implication arises that it did not intend to preempt other areas of state law. *Graham*, 857 F.3d at 1189; *see Nelson*, 928 F.3d at 648 (reasoning that the inclusion of other express preemption provisions in the HEA "weigh[s] against attributing to Congress a desire to preempt state law broadly"). In *Cipollone*, the Supreme Court explained:

> When Congress has considered the issue of pre-emption and has included in the enacted legislation a provision explicitly addressing that issue, and when that provision provides a reliable indicium of congressional intent with respect to state authority, there is no need to infer congressional intent to pre-empt state laws from the substantive provisions of the legislation. Such reasoning is a variant of the familiar principle of *expression unius est exclusio alterius*: Congress' enactment of a provision defining the pre-emptive reach of a statute implies that matters beyond that reach are not pre-empted.

*Cipollone*, 505 U.S. at 517 (internal quotation marks and citations omitted). Based on this implication, we conclude that conflict preemption does not apply. In the HEA, Congress included provisions expressly preempting specific areas of state law, including § 1098. *See, e.g.*, 20 U.S.C. §§ 1078(d) (state usury laws); 1091a(a)(2) (state statutes of limitations); 1091a(b)(2) (state law infancy defense). Section 1098g "offer[s] no cause to look beyond" it. *Cipollone*, 505 U.S. at 517. We therefore find "no need to infer congressional intent to pre-empt state laws from the substantive provisions" of the HEA. *Id.* (internal quotation marks omitted).

24

But even assuming that conflict preemption could exist here despite the HEA's express preemption provisions, we would nonetheless conclude that the Borrowers' claims present no conflict with the HEA.[13]  Great Lakes argues that the Borrowers' state law claims would interfere with, and therefore stand as an obstacle to, what Great Lakes contends was Congress's objective in the federal student loan program:  uniformity of communications between loan servicers and borrowers.[14]  Great Lakes's argument fails because it rests on the mistaken premise

---

[13] Great Lakes argues that we must defer to the DOE's determination in the Notice that Congress intended for the HEA to preempt state laws regulating servicers of FFEL loans.  *See* Notice, 83 Fed. Reg. at 10621.  But we conclude that the Notice is entitled to no special deference.  We find persuasive the district court's analysis of what deference the Notice is owed in *Student Loan Servicing Alliance v. District of Columbia*, 351 F. Supp. 3d 26, 48–49 (D.D.C. 2018), and similarly conclude that *Skidmore*, 323 U.S. at 138, 140, provides the appropriate framework for determining whether the agency's determination is entitled to deference.  Under *Skidmore*, we conclude that the Notice should be given little weight because "it is not particularly thorough and it 'represents a stark, unexplained change' in the Department's position."  *Nelson*, 928 F.3d at 651 n.2 (quoting *Student Loan Servicing Alliance*, 351 F. Supp. 3d at 50).  We acknowledge that the Notice also addresses express preemption; however, we find the Notice unpersuasive as to express preemption for the same reason.

[14] Relying on *Boyle v. United Technologies Corp.*, 487 U.S. 500, 508 (1988), Great Lakes also advances a broader theory of conflict preemption, one based on the "uniquely federal interest in uniformity."  Appellee's Br. at 28.  In *Boyle*, the Supreme Court held that state law is preempted where there is:  (1) "an area of uniquely federal interest" and (2) a "significant conflict exists between an identifiable federal policy or interest and the operation of state law, or the application of state law would frustrate specific objectives of federal legislation."  *Boyle*, 487 U.S. at 507 (alteration adopted) (citations and internal quotation marks omitted).  Great Lakes argues that there is a uniquely federal interest present in the HEA because loan servicers act under contracts with the federal government.

It is true that when liability is imposed on federal government contractors, the interest of the federal government is affected.  The inquiry does not end there, however, because even though the conflict in an area of uniquely federal interest "need not be as sharp as that which must exist for ordinary pre-emption," a "conflict there must be."  *Id.* at 507–08.  Because we conclude that uniformity is not an overarching goal of the HEA, no such conflict exists, and *Boyle* is inapplicable.

that Congress's goal in enacting the federal student loan program was such uniformity. Congress expressly identified the purposes of the program to include: (A) "encourag[ing] States and nonprofit institutions and organizations to establish adequate loan insurance programs for students," (B) "provid[ing] a Federal program of student loan insurance for students or lenders who do not have reasonable access to a State or private nonprofit program of student loan insurance," (C) "pay[ing] a portion of the interest on loans to qualified students which are insured," and (D) "guarantee[ing] a portion of each loan insured under a [qualified] program of a State or of a nonprofit private institution or organization." *See* 20 U.S.C. § 1071(a)(1). Notably, Congress did not use the word "uniformity" or invoke the concept of uniformity in § 1071(a)(1).

Absent a statement or other indication from Congress that its purpose in enacting the FFELP was uniformity, multiple courts that have examined this issue have determined that uniformity was not a goal of the HEA. *See Coll. Loan Corp. v. SLM Corp.*, 396 F.3d 588, 597 (4th Cir. 2005) ("We are unable to confirm that the creation of 'uniformity' . . . was actually an important goal of the HEA."); *Daniel v. Navient Sols., LLC*, 328 F. Supp. 3d 1319, 1324 (M.D. Fla. 2018) ("Uniformity, however, is not one of Congress's expressed goals in enacting the HEA . . . ."); *see also Brooks v. Salle Mae, Inc.*, No. FSTCV096002530S, 2011 WL 6989888, at *9 (Conn. Super. Ct. Dec. 20, 2011) (unpublished)

26

(concluding that "because uniformity is not mentioned as a goal of the HEA," compliance with the Connecticut Unfair Trade Practices Act "is not an obstacle to the achievement of the objectives of the HEA").

We acknowledge that the Ninth Circuit in *Chae* concluded otherwise when it determined that although some of the borrowers' claims were not expressly preempted by § 1098g, they nonetheless were implicitly preempted because they posed an obstacle to the uniform operation of FFELP and therefore the HEA. *Chae*, 593 F.3d at 946. In concluding that uniformity was an intended purpose of the HEA, the Ninth Circuit relied on the comprehensive framework of the FFELP, citing congressional direction to the DOE in the FFELP that referenced the standardizing of forms, procedures, terms, conditions, and benefits throughout the federal student loan programs. *Id.* at 944–45. The Ninth Circuit then determined that allowing state law causes of action to proceed would conflict with that purpose. *Id.* at 943, 945.

We are unconvinced by the Ninth Circuit's conclusion that uniformity was an intended purpose of the HEA. Accepting the Ninth Circuit's reasoning that the HEA, through regulations in the FFELP, provides a detailed comprehensive scheme or the standardization of certain procedures and other aspects of the federal student loan program does not lead us to its conclusion because we do not infer preemption from the comprehensive nature of a regulation alone. *N.Y. State Dep't*

*of Soc. Servs. v. Dublino*, 413 U.S. 405, 415 (1973).  Although the guidance provided by Congress in the FFELP is comprehensive, "subjects of modern social and regulatory legislation often by their very nature require intricate and complex responses from the Congress, but without Congress necessarily intending its enactment as the exclusive means of meeting the problem."  *Id.*  *Chae* is also distinguishable because the Ninth Circuit identified the Congress's purpose as the "uniform administration" of the FFELP.  593 F.3d at 944–55, 948.  The claims in *Chae* concerned assessment of late fees, establishing repayment start dates, and interest calculations—core administrative aspects of the FFELP that arguably require more nationwide consistency than the subject of the claims at issue here, personalized advice about loan forgiveness provided to individual student loan borrowers.  *See id.*; *see also Nelson*, 928 F.3d at 651 (noting that the broad language regarding conflict preemption in *Chae* "focused on different sorts of claims, where the value of uniformity would be more compelling than it is here" and "assum[ing] the need for nationwide consistency on those sorts of administrative mechanics is substantial").

Even if we assume that uniformity is a purpose of the HEA, the Borrowers' claims would not conflict with that purpose.  Congress's interest in ensuring uniform disclosures would not be harmed by a prohibition on voluntary affirmative misrepresentations  *See Cipollone*, 505 U.S. at 529 ("State-law prohibitions on

28

false statements of material fact do not create 'diverse, nonuniform, and confusing' standards.") (plurality opinion); *see also Pennsylvania v. Navient Corp.*, 354 F. Supp. 3d 529, 553 (M.D. Pa. 2018) ("Whether or not 'uniformity' is actually a goal of the HEA . . . [t]he uniformity of the HEA in setting its requirements for the standard parameters of the federal student loan programs is not harmed by prohibiting unfair or deceptive conduct in the operation of those programs that is not explicitly permitted by the HEA . . . .").[15]  We agree with the reasoning of these courts:  prohibiting Great Lakes from making affirmative misrepresentations to borrowers—in contrast to imposing a duty to disclose—does no harm to standardization of disclosures for federal student loan programs.

### 2. The HEA Does Not Preempt the Field of Regulation of Student Loans.

Relying on its argument that the HEA requires uniform administration, Great Lakes argues that field preemption also applies.  Field preemption exists where Congress has "legislated so comprehensively" in an area of law that there is no room for supplemental state legislation.  *R.J. Reynolds Tobacco Co. v. Durham Cty.*, 479 U.S. 130, 140 (1986).

We find Great Lakes's field preemption argument to be the weakest of its preemption arguments.  This Court previously has addressed the question of field

---

[15] An appeal of this decision is currently pending before the Third Circuit.  *See Pennsylvania v. Navient Corp.*, No. 19-2116 (3rd Cir).

preemption by the HEA in the context of debt collection and consumer protection law. *See Cliff v. Payco Gen. Am. Credits, Inc.*, 363 F.3d 1113, 1125–26 (11th Cir. 2004). Taking into account the HEA's express preemption provisions, we concluded in *Cliff* that "the enactment of the HEA does not 'occupy the field' of debt collection practices and thus does not impliedly preempt [state laws]." *Id.* at 1126. We similarly conclude here that federal regulation of lending to students for higher education is not so extensive as to indicate that Congress intended to occupy the entire field. The mere fact that Congress has legislated in this field does not imply that it seeks to occupy the entirety of it. *See Keams v. Tempe Tech. Inst., Inc.*, 39 F.3d 222, 226 (9th Cir. 1994) (observing that "a detailed regulatory scheme does not by itself imply preemption of state remedies" or an intent by Congress to occupy the entire field). Given the implication against implied preemption where Congress has expressly preempted specific areas of state law, *see Cipollone*, 505 U.S. at 517, we conclude, as we did in *Cliff*, that field preemption does not apply to the HEA.

Our conclusion is consistent with decisions from other courts addressing field preemption by the HEA. Indeed, no circuit court that has considered the issue has found field preemption. *See Nelson*, 928 F.3d at 652 ("Courts have consistently held that field preemption does not apply to the HEA, and we do as well."); *Chae*, 593 F.3d at 941–42 (noting that "field preemption does not apply to

30

the HEA"); *Armstrong v. Accrediting Council for Continuing Educ. & Training, Inc.*, 168 F.3d 1362, 1369 (D.C. Cir. 1999) (concluding that "federal education policy regarding [lending to students] is not so extensive as to occupy the field"). Field preemption does not apply to the Borrowers' claims.

## V.    CONCLUSION

The district court erred in concluding that the Borrowers' claims were preempted by the HEA.  We note that Great Lakes raised in the district court additional arguments why the Borrowers' claims should be dismissed, including that the Borrowers failed to meet Federal Rule of Civil Procedure 9(b)'s heightened pleading standard.  But "[b]ecause none of these issues were decided initially, we decline to address them for the first time on appeal." *Leal v. Ga. Dep't of Corrs.*, 254 F.3d 1276, 1280–81 (11th Cir. 2001).  We thus vacate the district court's order granting the motion to dismiss and remand for further proceedings consistent with this opinion.

**VACATED and REMANDED.**

31