[Cite as *State ex rel. Atty. Gen. v. Mastergard*, 2016-Ohio-660.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio ex rel.<br>Attorney General [Michael DeWine], | : | |
| | : | |
| Plaintiff-Appellee, | : | |
| | : | |
| and | | No. 14AP-1024 |
| | : | (C.P.C. No. 07CV-9803) |
| Manitou Helton et al., | | |
| | : | (REGULAR CALENDAR) |
| Movants-Appellants, | | |
| | : | |
| v. | | |
| | : | |
| Mastergard et al., | | |
| | : | |
| Defendants-Appellees. | | |
| | : | |

D E C I S I O N

Rendered on February 23, 2016

**On brief:** *Michael DeWine*, Attorney General, and *Melissa Wright*, for plaintiff-appellee. **Argued:** *Melissa Wright*

**On brief:** *Kevin O'Brien & Associates Co., L.P.A.*, *Kevin O'Brien*, and *Jeffrey A. Catri*, for appellants. **Argued:** *Kevin O'Brien*

**On brief:** *Tyack, Blackmore, Liston & Nigh Co., L.P.A.*, *James P. Tyack*, and *Ryan L. Thomas*, for appellee Daniel Sechriest. **Argued:** *James P. Tyack*

APPEAL from the Franklin County Court of Common Pleas

BROWN, J.

{¶ 1} This is an appeal by movants-appellants, Manitou Helton, Danna Rogers, Michael Feltner, Melissa Feltner, Samuel Brisco, Lisa McKibben, and Beulah Daniel

(collectively "appellants"), from a decision and entry of the Franklin County Court of Common Pleas denying appellants' Civ.R. 71 motion seeking enforcement of an agreed consent judgment entry and order ("consent judgment") between plaintiff-appellee, the Ohio Attorney General ("attorney general"), and defendants-appellees, Daniel Sechriest ("Sechriest"), Mastergard, Inc. ("Mastergard"), and Mastergard Remodeling Company, d.b.a. Supreme Remodeling Concepts, Inc. ("Mastergard Remodeling").

{¶ 2} The following background facts are essentially undisputed, and drawn primarily from the trial court's decision and entry denying appellants' Civ.R. 71 motion. On July 25, 2007, the attorney general filed a civil lawsuit in the Franklin County Court of Common Pleas naming as defendants Sechriest and two home improvement companies, Mastergard and Mastergard Remodeling (collectively "defendants"), and seeking a declaratory judgment, injunctive relief, restitution, and civil penalties. The complaint alleged violations by defendants of the Ohio Consumer Sales Practices Act ("CSPA"), the Ohio Home Solicitation Sales Act ("HSSA"), and the Magnuson-Moss Warranty Act. On April 29, 2008, the attorney general filed an amended complaint which included allegations that defendants had violated the Ohio Second Mortgage Act and the Ohio Telemarketing Act. The parties subsequently resolved the litigation and the trial court approved a consent judgment filed August 9, 2010 which the parties proposed pursuant to R.C. 1345.07(F).

{¶ 3} In general, the consent judgment declared that the defendants had engaged in practices that violated several provisions of the foregoing laws, and enjoined them from future violations of CSPA and HSSA. The decree conditionally enjoined Sechriest from engaging in the home improvement industry, and required him to notify the attorney general at least 90 days in advance of soliciting any Ohio consumer or engaging in the business of effecting consumer transactions in the home improvement business in Ohio as a supplier. The consent judgment ordered defendants to provide restitution in the amount of $28,938.50 to the attorney general to distribute to specific consumers listed in exhibits attached to the consent judgment; further, the payment of civil penalties and attorney fees, which totaled $350,000.00, was suspended on the condition of Sechriest's compliance with all other provisions of the decree.

{¶ 4} Appellants were not a party to the 2007 lawsuit or the 2010 consent judgment. On June 5, 2014, appellants filed with the trial court a Civ.R. 71 motion,

requesting the court to "enforce the obedience of Daniel Sechriest, A Reliable Restoration & Remodeling Company, Unleaded Construction, L.L.C., DTM Industries, L.L.C., U.S. Restoration & Remodeling, Inc., and Ryan Construction & Roofing, L.L.C. * * * to the Agreed Consent Judgment Entry and Order filed in this case of August 9, 2010, and to grant the relief set forth below."  In the motion, appellants alleged that Sechriest was operating home improvement companies without notice to the attorney general in violation of the consent judgment.

{¶ 5}  Both the attorney general and Sechriest filed responses to appellants' motion, disputing appellants' ability to invoke Civ.R. 71 in this manner.  The attorney general argued that, contrary to appellants' allegations, it was aware Sechriest owned U.S. Restoration & Remodeling, Inc. ("U.S. Restoration") through a confidential investigation conducted by its office.  In his response, Sechriest argued that appellants were neither parties nor intended beneficiaries of the consent judgment, and, therefore, lacked standing to bring the action.  By decision and entry filed November 14, 2014, the trial court denied the Civ.R. 71 motion, finding appellants were "not intended third-party beneficiaries with standing to enforce the Consent Judgment under Civ.R. 71."

{¶ 6}  On appeal, appellants set forth the following assignment of error for this court's review:

> THE TRIAL COURT ERRED IN DENYING MOVANTS'
> CIV.R. 71 MOTION.

{¶ 7}  Under their single assignment of error, appellants argue that the trial court erred in denying their motion under Civ.R. 71.  Appellants assert that ¶ 10 of the consent judgment prohibited Sechriest from engaging in the "same or similar business as is the subject of this Consent Judgment" without providing written 90-day notice to the attorney general and the trial court; appellants maintain that Sechriest has failed to provide such notice to the attorney general and the trial court in violation of the decree. According to appellants, the attorney general is aware of Sechriest's conduct but has failed to respond.  Appellants further argue they are the type of group intended to benefit from the consent judgment, asserting that Sechriest has used U.S. Restoration to perpetuate consumer violations against them.  Appellants acknowledge they have already initiated separate lawsuits against Sechriest and U.S. Restoration for monetary damages for alleged violations of CSPA and HSSA; appellants contend, however, they have standing to seek

injunctive relief and enforcement of the terms of the 2010 consent judgment pursuant to Civ.R. 71 as third-party beneficiaries of that decree.

{¶ 8}   Civ.R. 71 states:

> When an order is made in favor of a person who is not a party to the action, he may enforce obedience to the order by the same process as if he were a party; and, when obedience to an order may be lawfully enforced against a person who is not a party, he is liable to the same process for enforcing obedience to the order as if he were a party.

{¶ 9}   Whether appellants have standing under the provisions of Civ.R. 71 is a question of law this court reviews de novo. *Save the Lake v. Hillsboro,* 158 Ohio App.3d 318, 2004-Ohio-4522, ¶ 9 (4th Dist.).  Civ.R. 71, which is analogous to Fed.Civ.R. 71, " 'is merely an enabling rule which allows orders in favor of and against persons not parties.  It is intended to eliminate the necessity of making persons technical parties to suits in order to reach a just and proper result. * * * The rule is intended to operate only in cases where the person not a party is entitled to an order or where there may be enforcement of an order against a person not a party.' " *Id.* at ¶ 10, quoting Staff Notes to Civ.R. 71.

{¶ 10}  As noted, appellants contend they are entitled to benefit from the consent judgment as third-party beneficiaries.  In general, " '[a] third party beneficiary is one for whose benefit a promise has been made in a contract but who is not a party to the contract.' "  *Maghie & Savage, Inc. v. P.J. Dick, Inc.,* 10th Dist. No. 08AP-487, 2009-Ohio-2164, ¶ 40*,* quoting *Chitik v. Allstate Ins. Co.,* 34 Ohio App.2d 193, 196 (8th Dist.1973).  Ohio contract law distinguishes between intended third-party beneficiaries and incidental third-party beneficiaries.  While an intended third-party beneficiary "has enforceable rights under a contract, an incidental third-party beneficiary does not."  *Maghie & Savage* at ¶ 40, citing *Hill v. Sonitrol of Southwestern Ohio, Inc.,* 36 Ohio St.3d 36, 40 (1988).

{¶ 11}  The Supreme Court of Ohio has adopted "an 'intent to benefit' test * * * to decide whether a third party is an intended or incidental beneficiary." *Fed. Ins. Co. v. Fredericks, Inc.,* 2d Dist. No. 26230, 2015-Ohio-694, ¶ 39, quoting *Hill* at 40.  Specifically, in *Hill* at 40, the Supreme Court held in relevant part:

> In *Norfolk & Western Co. v. United States* (C.A. 6, 1980), 641 F. 2d 1201, 1208, the United States Court of Appeals for the Sixth Circuit, applying Ohio law, explained the "intent to

benefit" test, a test used to determine whether a third party is an intended or incidental beneficiary:

"* * * Under this analysis, if the promisee * * * intends that a third party should benefit from the contract, then that third party is an 'intended beneficiary' who has enforceable rights under the contract. If the promisee has no intent to benefit a third party, then any third-party beneficiary to the contract is merely an 'incidental beneficiary,' who has no enforceable rights under the contract.

"* * * [T]he mere conferring of some benefit on the supposed beneficiary by the performance of a particular promise in a contract [is] insufficient; rather, the performance of that promise must also satisfy a duty owed by the promisee to the beneficiary."

{¶ 12} In considering whether appellants had standing to seek enforcement of the consent judgment, the trial court in this case analyzed two Ohio cases involving consent decrees, *Save the Lake* and *McDowell v. Toledo,* 6th Dist. No. L-10-1229, 2011-Ohio-1842. Under the facts in *Save the Lake*, the attorney general filed a complaint against the city of Hillsboro ("the city") for alleged violations of an Ohio EPA order, asserting that the city had violated the order by discharging sewage and industrial waste into a creek. In 1988, the city and attorney general entered into a consent decree, requiring the city to comply with state and federal laws designed to protect waters. In 2003, Save the Lake Association ("the appellant"), an Ohio non-profit corporation, filed a complaint to enforce the consent order, alleging that its members were being adversely affected by the city's failure to comply with the consent decree. The city subsequently filed a motion to dismiss, asserting that the appellant lacked standing. The appellant responded that it had standing to enforce the consent decree pursuant to Civ.R. 71. The trial court granted the city's motion to dismiss, concluding that the appellant did not have standing under Civ.R. 71, and the appellant appealed the trial court's judgment.

{¶ 13} In *Save the Lake,* the appellate court looked to federal law regarding consent decrees in determining whether the appellant had standing to enforce the 1988 consent order entered into between the attorney general and the city. Specifically, the court examined *Hook v. Arizona Dept. of Corr.,* 972 F.2d 1012 (9th Cir.1992), in which that court discussed the distinction between incidental and intended third-party

beneficiaries of a consent decree.  In applying that distinction, the court in *Save the Lake* found no "express manifestation of an intent to create intended third-party beneficiaries in the language of the agreement between the OEPA and the city."  *Save the Lake* at ¶ 16. The court further cited Supreme Court case law holding that "where an agency is charged with enforcement of certain laws, these laws do not confer upon an individual the right to bring a private civil action absent a 'clear implication' that such a remedy was intended by the legislature."  *Id.* at ¶ 17, citing *Fawcett v. G.C. Murphy & Co.,* 46 Ohio St.2d 245, 248-49 (1976).  Applying those principles, the court in *Save the Lake* concluded that the appellant "cannot establish Civ.R. 71 standing so as to maintain this action and must explore other ways to air its grievances."  *Id.*

{¶ 14}  Under the facts of *McDowell,* the appellant, city of Toledo ("the city"), was a party to a consent judgment in 1992 following a lawsuit initiated by four individuals who lived within the city and who claimed the city's failure to provide them with notice before shutting off their water had deprived them of a property interest.  The consent decree obligated the city to provide certain rights to recipients of its water services, including non-property owners, and also included a permanent injunction in favor of Ruby McDowell.  Approximately 20 years later, Kyle Tate and the Toledo Fair Housing Center, both non-parties to the 1992 consent judgment, filed an emergency motion to enforce the consent judgment, pursuant to Civ.R. 71, alleging that the city's failure to provide notice prior to the termination of water services was in violation of the consent judgment.  Tate argued in part that, while one portion of the 1992 consent judgment "provided limited injunctive relief specifically to Ruby McDowell, the overall intent of the entry was clearly to provide its benefits to all Toledo residents."  *Id.* at ¶ 14.  The trial court ruled that Tate was an intended third-party beneficiary of the 1992 consent judgment, and ordered the city to restore water service to Tate's residence and provide the occupants of the residence with notice as required by the 1992 consent judgment.

{¶ 15} The city appealed the trial court's ruling, arguing that Tate could not meet the burden of showing he was an intended third-party beneficiary.  In *McDowell*, the court held that Tate was entitled to enforce the consent judgment, citing language from the 1992 consent judgment "that provides rights for persons other than the late Ruby McDowell and obligates the city to provide notice and options to continue water services to individuals such as Tate."  *Id.* at ¶ 22.  The court in *McDowell* further noted that the

city, in order to comply with the consent judgment, "adopted the terms of the judgment entry when it revised its administrative regulations shortly thereafter, essentially mirroring the terms of the [consent judgment]." *Id.* at ¶ 27. Thus, the court found, if the consent judgment "had been intended to apply only to the original parties to the lawsuit in 1992, the city would not have incorporated identical terms into the Toledo Municipal Code as it did." *Id.*

{¶ 16} In the case before us, the trial court found the facts of the case sub judice to be "more similar to *Save the Lake* than to *McDowell*," and determined that appellants were "not intended third-party beneficiaries with standing to enforce the Consent Judgment under Civ.R. 71." Specifically, in analyzing *Save the Lake,* the trial court noted that the attorney general in that case "was exercising statutory police power to enforce the water pollution laws of R.C. Chapter 6111," and "[t]he consent decree that resulted did not name any individual or group as a beneficiary or vest enforcement authority in anyone but the Attorney General (and presumably the Court)." By contrast, the trial court found that the focal point of the consent decree in *McDowell* "was to create new procedures to protect the due process rights of Toledo residents facing a water shut-off," and that "the language employed in the decree as well as the purpose of the action created rights in those individuals."

{¶ 17} In reviewing the language of the consent judgment in the instant case, the trial court found "no rights-creating language for the public at large or for future customers." The trial court also considered the following provisions of the consent judgment with respect to enforcement rights:

> 19. IT IS FURTHER ORDERED that any violation of the Orders set forth in Paragraphs (1) through (16) above shall constitute contempt.
>
> 20. IT IS FURTHER ORDERED that in the event the Ohio Attorney General must initiate legal action or incur any costs to compel Defendants to abide by this Consent Judgment, upon proof of the violation, Defendants shall be liable to the Ohio Attorney General for any such costs associated with proving that violation, including, but not limited to, a reasonable sum for attorneys' fees.
>
> 21. Failure of the Attorney General to timely enforce any term, condition, or requirement of this Consent Judgment shall not

provide, nor be construed to provide, Defendants a defense for noncompliance with any term of this Consent Judgment or any other law, rule, or regulation; nor shall it stop or limit the Attorney General from later enforcing any term of this Consent Judgment or seeking any other remedy available by law, rule, or regulation.

22. IT IS FURTHER ORDERED that, upon Defendants' failure to comply with the provisions of this Consent Judgment, the Ohio Attorney General may enforce payment of the amounts set forth in Paragraphs (17) and (18) and that the Defendants agree that such obligations are non-dischargeable penalties and should be treated as such in any subsequent bankruptcy filing.

{¶ 18} The trial court found that the above provisions "do not give express enforcement authority to third-parties like the Movants," nor is it "implied therein that non-parties may enforce it." The court also noted that appellants "were not parties to that action or the Consent Judgment," nor were they "identified, by name or specific class" in the consent judgment. Further, while various exhibits attached to the consent judgment "identified over 40 individuals who were owed restitution or the release of mechanics' liens by Sechriest," none of the appellants in the instant action were among the consumers listed in those exhibits. Upon consideration of the consent judgment, the trial court held that "[t]he benefit conferred upon Ohio consumers generally by the Attorney General's exercise of police powers against Mr. Sechriest and his companies under the CSPA is incidental and indirect rather than intentional."

{¶ 19} As indicated, the trial court found the instant action more analogous to *Save the Lake* than *McDowell*. In *Save the Lake,* the court relied in part on federal case law recognizing a "distinction between incidental 'public at large' beneficiaries and intended beneficiaries." *Id.* at ¶ 16. Upon review, we find that federal law supports the trial court's interpretation of the enforcement provisions of the consent judgment as well as its application of Civ.R. 71 in the context of a third party seeking to enforce a consent decree obtained by a governmental entity.

{¶ 20} In *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 750 (1975), the United States Supreme Court held that "a consent decree is not enforceable directly or in collateral proceedings by those who are not parties to it even though they were intended to be benefited by it." Some federal courts have interpreted the holding in *Blue Chip*

*Stamps* as creating "a presumption that third parties who stand to benefit from consent judgments are merely incidental beneficiaries." *Frangos v. Bank of Am., N.A,* D.N.H. No. 13-cv-472-PB (July 24, 2014). In this respect, the Sixth Circuit Court of Appeals has "rejected the intended beneficiary exception because 'the plain language of *Blue Chip* indicates that even intended third-party beneficiaries of a consent decree lack standing to enforce its terms.' " *Biovail Corp. Internatl. v. Hoechst Aktiengesellschaft,* 49 F.Supp.2d 750, 763 (D.N.J.1999), quoting *Aiken v. Memphis,* 37 F.3d 1155, 1168 (6th Cir.1994).

{¶ 21} Other federal courts, in the context of applying Fed.Civ.R. 71, have interpreted *Blue Chip Stamps* to "prohibit only *incidental* beneficiaries from enforcing nongovernmental consent decrees." (Emphasis sic.) *United States v. Dominion Energy, Inc.,* C.D.Ill., No. 13-cv-03086 (Apr. 15, 2014). Illustrative of this approach is *Hodges by Hodges v. Pub. Bldg. Comm.,* 864 F.Supp. 1493, 1508 (N.D.Ill.1994), in which the court held that "[d]espite its seemingly sweeping proscription, *Blue Chip Stamps* has been interpreted narrowly so that certain third party beneficiaries still may sue to enforce a consent decree." Thus, "[p]roceeding under the theory that the Supreme Court had not meant to eviscerate Rule 71, courts have created an exception for would-be plaintiffs who are the intended, versus incidental, third party beneficiaries of the decree." *Id. See also Untied States v. FMC Corp.,* 531 F.3d 813, 820 (9th Cir.2008) ("In short, under Ninth Circuit precedent, *incidental* third-party beneficiaries may not enforce consent decrees, but *intended* third-party beneficiaries may."). (Emphasis sic.)

{¶ 22} While some federal courts have held that intended third-party beneficiaries may sue to enforce a consent decree, those same courts have been reluctant to apply this exception to consent decrees "resulting from actions brought by the government." *Hodges* at 1508. Rather, the general rule is that " 'only the Government can seek enforcement of its consent decrees; therefore, even if the Government intended its consent decree to benefit a third party, that party could not enforce it unless the decree so provided.' " *Id.,* quoting *Beckett v. Air Line Pilots Assn.,* 995 F.2d 280, 288 (D.C.Cir.1993). *See also Rafferty v. NYNEX Corp.,* 60 F.3d 844, 849 (D.C.Cir.1995) ("Unless a government consent decree stipulates that it may be enforced by a third party beneficiary, only the parties to the decree can seek enforcement of it."). Such interpretation "derives from a general contract principle that third party beneficiaries of a government contract generally are assumed to be merely incidental beneficiaries, and

may not enforce the contract absent clear intent to the contrary." *Hodges* at 1509. *See also SEC v. Prudential Secs.,* 136 F.3d 153, 158 (D.C.Cir.1998) ("the reason that courts are more loath to allow third parties to enforce consent decrees when the government is involved is that, because the government usually acts in the general public interest, third parties are presumed to be incidental beneficiaries").

{¶ 23} Based on this court's de novo review, we find no error with the trial court's finding that appellants were not intended third-party beneficiaries under the language of the consent judgment. Here, it is undisputed that appellants were not parties to the 2007 lawsuit or the subsequent consent judgment. Under the terms of the consent judgment, the defendants were liable to various individual consumers, the names of which appear in exhibits attached to that decree, for "consumer restitution" and/or the release of mechanics' liens; no appellants, however, are named as consumer beneficiaries in either the consent judgment or the attached exhibits. Moreover, the enforcement provisions of the consent judgment do not give enforcement authority to third parties; rather, as noted by the trial court, the enforcement rights provided in the decree "contemplate enforcement only by the Attorney General." As also observed by the trial court, "portions of the relief sought by [appellants] are available only to the Attorney General under R.C. 1345.07," and we agree with the trial court's determination that "[t]he statutory framework does not permit private parties to step into the shoes of the Attorney General and to benefit beyond the relief provided by statute through enforcement of a governmental lawsuit and consent decree."

{¶ 24} Accordingly, because appellants were not intended third-party beneficiaries of the consent judgment, the trial court did not err in its determination that they lacked standing to enforce the decree. Based on the foregoing, appellants' single assignment of error is overruled, and the judgment of the Franklin County Court of Common Pleas is hereby affirmed.

*Judgment affirmed.*

KLATT and HORTON, JJ., concur.

————————————