[Cite as *Santagate v. Pennsylvania Higher Edn. Assistance Agency*, 2020-Ohio-3153.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

Christopher P. Santagate, :

      Plaintiff-Appellant, :

v. :

Pennsylvania Higher Education Assistance :
Agency (PHEAA) d.b.a. FedLoan Servicing,

      Defendant-Appellee. :

:

No. 19AP-705
(C.P.C. No. 16CV-7291)

(REGULAR CALENDAR)

D E C I S I O N

Rendered on June 2, 2020

**On brief:** *Bailey Cavalieri, LLC, Christopher P. Santagate,* and *Mark A. Glumac*, for appellant.

**On brief:** *Fisherbroyles, LLP, Michael R. Travern,* and *Robert B. Graziano*, for appellee.

APPEAL from the Franklin County Court of Common Pleas

LUPER SCHUSTER, J.

{¶ 1} Plaintiff-appellant, Christopher P. Santagate, appeals from a judgment entry of the Franklin County Court of Common Pleas granting the motion for summary judgment of defendant-appellee, Pennsylvania Higher Education Assistance Agency (PHEAA), d.b.a. FedLoan Servicing. Santagate additionally appeals from the trial court's previous decision granting in part PHEAA's motion to dismiss. For the following reason, we affirm in part and reverse in part.

## I. Facts and Procedural History

{¶ 2} On August 4, 2016, after initially filing a complaint in the trial court, removing the action to federal court, and the federal court dismissing his claims,

Santagate re-filed a complaint against PHEAA asserting claims for (1) breach of contract, (2) fraud/fraudulent representation/fraudulent concealment, (3) negligent misrepresentation/concealment, (4) breach of fiduciary duty, (5) unjust enrichment, and (6) violation of the Ohio Consumer Sales Protection Act ("CSPA"). In his complaint, Santagate stated he applied for and received several federal student loans from the United States Department of Education on June 11, 2008, with a final disbursement scheduled for August 12, 2011. The application and master promissory note, which Santagate attached to his complaint, provided that the Direct Loan Servicing Center ("DLSC") would service Santagate's loans. However, the complaint alleges that in June 2013, the Department of Education awarded a contract to PHEAA to service loans previously serviced by DLSC, and, as a result, PHEAA began servicing Santagate's loans on June 14, 2013.

{¶ 3} Santagate further alleged in his complaint that on June 28, 2013, he received a message from PHEAA's online messaging center notifying him of an income-contingent repayment ("ICR") plan. Santagate categorized this message as being in breach of the notes which required correspondence either to be mailed to Santagate's physical address or to be sent as an electronic message to Santagate's registered email address. Further, Santagate alleged the ICR plan notice informed Santagate he must submit an application within ten days or his monthly payments would increase from less than $800.00 per month to $1,716.61 per month. However, Santagate alleged he did not become aware of the online message until September 4, 2013, thereby missing the ten-day deadline to submit an application. After Santagate contacted PHEAA to discuss the matter, he alleged that PHEAA placed his loans into forbearance without him requesting it, causing his interest rate to increase. Santagate additionally alleged PHEAA improperly calculated the accrued interest on his loans.

{¶ 4} PHEAA responded to Santagate's complaint with a Civ.R. 12(B)(6) motion to dismiss filed September 6, 2016. In its motion to dismiss, PHEAA noted it did not own Santagate's loans, but acted only as the loan servicer. Instead, PHEAA asserted the master promissory notes exist between Santagate and the Department of Education. PHEAA then argued Santagate's complaint failed to state a claim for a violation of the CSPA, breach of contract, unjust enrichment, breach of fiduciary duty, fraud, fraudulent concealment, and negligent misrepresentation.

{¶ 5} In a November 8, 2017 decision and entry, the trial court granted in part and denied in part PHEAA's motion to dismiss. Specifically, the trial court granted PHEAA's motion to dismiss Santagate's claims for violation of the CSPA, unjust enrichment, breach of fiduciary duty, fraud/fraudulent representation/fraudulent concealment, and negligent misrepresentation. However, the trial court denied PHEAA's motion to dismiss Santagate's claim for breach of contract because Santagate alleged he was a third-party beneficiary to the contract between the Department of Education and PHEAA. Because the trial court concluded it did not appear beyond doubt that Santagate could not establish grounds for breach of contract on the theory of third-party beneficiary, the trial court determined it could not dismiss Santagate's claim for breach of contract under Civ.R. 12(B)(6). Subsequently, on November 22, 2017, PHEAA filed an answer for the sole remaining claim of breach of contract.

{¶ 6} Following discovery, PHEAA filed a motion for summary judgment on September 18, 2018 on Santagate's sole remaining claim of breach of contract. Santagate opposed the motion in a November 15, 2018 memorandum contra.

{¶ 7} In a September 11, 2019 decision and entry, the trial court granted PHEAA's motion for summary judgment. Specifically, the trial court found there was no privity between Santagate and PHEAA so the only remaining issue was whether Santagate was a third-party beneficiary to the servicing contract between PHEAA and the Department of Education. The trial court then concluded that the contract between PHEAA and the Department of Education was a government contract and, as such, there remained no genuine issue of material fact that Santagate was not an intended third-party beneficiary under the contract. Based on that finding, the trial court concluded PHEAA was entitled to summary judgment on Santagate's sole remaining claim of breach of contract. The trial court then entered judgment in favor of PHEAA in a September 24, 2019 judgment entry. Santagate timely appeals.

## II. Assignments of Error

{¶ 8} Santagate assigns the following errors for our review:

[1.] The trial court erred in holding the Ohio Consumer Sales Protection Act does not cover a student loan transaction.

[2.] The trial court erred in clarifying its finding of privity of contract between a "Direct Loan" borrower and his servicer to hold none exists.

[3.] The trial court erred in holding a "Direct Loan" borrower is not an intended third-party beneficiary of the contract between his servicer and the Department of Education.

[4.] The trial court erred in holding no special relationship or fiduciary relationship can exist between a student loan borrower and his servicer.

[5.] The trial court erred in holding a student loan borrower is not permitted to bring a claim for fraud against his student loan servicer.

[6.] The trial court erred in holding that a "Direct Loan" servicer cannot be unjustly enriched by a "Direct Loan" borrower.

## III.  Standard of Review and Applicable Law

{¶ 9}    Santagate appeals from both the trial court's November 8, 2017 decision and entry granting in part PHEAA's motion to dismiss and the trial court's September 11, 2019 decision and entry granting PHEAA's motion for summary judgment.  More specifically, Santagate's first, fourth, fifth, and sixth assignments of error relate to the trial court's decision granting in part PHEAA's motion to dismiss, while Santagate's second and third assignments of error relate to the trial court's decision and entry granting PHEAA's motion for summary judgment.

### A.  Standard of Review for Civ.R. 12(B)(6) Motion to Dismiss

{¶ 10}  Under Civ.R. 12(B)(6), a defendant may move to dismiss a complaint for failure to state a claim upon which relief can be granted.  A Civ.R. 12(B)(6) motion to dismiss tests the sufficiency of a complaint.  *O'Brien v. Univ. Community Tenants Union, Inc.*, 42 Ohio St.2d 242, 245 (1975).  In ruling on a motion to dismiss pursuant to Civ.R. 12(B)(6), the court must construe the complaint in the light most favorable to the plaintiff, presume all factual allegations in the complaint are true, and make all reasonable inferences in favor of the plaintiff.  *Mitchell v. Lawson Milk Co.*, 40 Ohio St.3d 190, 192 (1988).  The dismissal of a complaint for failure to state a claim is proper when it appears,

beyond doubt, that the plaintiff can prove no set of facts entitling him to relief. *Celeste v. Wiseco Piston*, 151 Ohio App.3d 554, 2003-Ohio-703, ¶ 12 (11th Dist.). When reviewing a decision on a Civ.R. 12(B)(6) motion to dismiss for failure to state a claim upon which relief can be granted, this court's standard of review is de novo. *Foreman v. Dept. of Rehab. & Corr.*, 10th Dist. No. 14AP-15, 2014-Ohio-2793, ¶ 9.

### B. Standard of Review for Motion for Summary Judgment

{¶ 11} An appellate court reviews summary judgment under a de novo standard. *Coventry Twp. v. Ecker*, 101 Ohio App.3d 38, 41 (9th Dist.1995); *Koos v. Cent. Ohio Cellular, Inc.*, 94 Ohio App.3d 579, 588 (8th Dist.1994). Summary judgment is appropriate only when the moving party demonstrates (1) no genuine issue of material fact exists, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds could come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence most strongly construed in its favor. Civ.R. 56(C); *State ex rel. Grady v. State Emp. Relations Bd.*, 78 Ohio St.3d 181, 183 (1997).

{¶ 12} Pursuant to Civ.R. 56(C), the moving party bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record demonstrating the absence of a material fact. *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996). However, the moving party cannot discharge its initial burden under this rule with a conclusory assertion that the nonmoving party has no evidence to prove its case; the moving party must specifically point to evidence of the type listed in Civ.R. 56(C) affirmatively demonstrating that the nonmoving party has no evidence to support the nonmoving party's claims. *Id.*; *Vahila v. Hall*, 77 Ohio St.3d 421, 429 (1997). Once the moving party discharges its initial burden, summary judgment is appropriate if the nonmoving party does not respond, by affidavit or as otherwise provided in Civ.R. 56, with specific facts showing that a genuine issue exists for trial. *Dresher* at 293; *Vahila* at 430; Civ.R. 56(E).

### IV. First Assignment of Error – CSPA Claim

{¶ 13} In his first assignment of error, Santagate argues the trial court erred in granting PHEAA's motion to dismiss his claim for a violation of the CSPA.

{¶ 14} Santagate brought his claim pursuant to the CSPA, which provides "[n]o supplier shall commit an unfair or deceptive act or practice in connection with a consumer transaction."  R.C. 1345.02(A).  "Such an unfair or deceptive act or practice violates this section whether it occurs before, during, or after the transaction."  R.C. 1345.02(A).  However, PHEAA argues, and the trial court found, that the CSPA does not apply to Santagate's allegations because PHEAA is not a "supplier" within the meaning of the CSPA and does not engage in a "consumer transaction" as required by the CSPA.

{¶ 15} PHEAA relies on the Supreme Court of Ohio's decision in *Anderson v. Barclay's Capital Real Estate, Inc.*, 136 Ohio St.3d 31, 2013-Ohio-1933, which held that a servicer of a residential mortgage loan is not a "supplier" within the meaning of the CSPA, and that the servicing of a residential mortgage loan is not a "consumer transaction" within the meaning of the CSPA.  *Anderson* at syllabus.  In considering the nature of mortgage servicing, the Supreme Court noted the servicing of a real estate mortgage does not involve the transfer of a service to a consumer.  *Id.* at ¶ 12.  Further, the Supreme Court stated:

> Mortgage servicing is a contractual agreement between the mortgage servicer and the financial institution that owns both the note and mortgage. *Mortgage servicing is carried out in the absence of a contract between the borrower and the mortgage servicer.* We recognize that the mortgage servicer's duties may involve direct and indirect interactions with borrowers on behalf of the financial institution. Sometimes the mortgage servicer may even assist the borrower in modifying the terms of the note, but the mortgage servicer undertakes the negotiation not for itself but on behalf of the financial institution.

(Emphasis added.)  *Anderson* at ¶ 13.  Thus, the Supreme Court reasoned that mortgage servicing is a "collateral service" that is not necessary to effectuate the underlying real estate transaction, and thus it does not qualify as a consumer transaction within the meaning of the CSPA. *Id.* at ¶ 14

{¶ 16} Moreover, the Supreme Court in *Anderson* reasoned that a mortgage servicer is not a "supplier" within the meaning of the CSPA because the mortgage servicer does not "engage in the business of effecting or soliciting consumer transactions."  *Id.* at ¶ 31.  Instead, in the context of residential mortgages, the transaction occurs between the

financial institution and the borrower, and "simply servicing the mortgage is not causing a consumer transaction to happen." *Id.*

{¶ 17} Although Santagate argues *Anderson* should not apply here because that case involved the servicer of a residential mortgage loan as opposed to a servicer of a federal student loan, we find this to be a distinction without a difference. Here, the note provides that the student loan servicer's function is to service the loan, answer questions about the loan, and process payments on the loan; in other words, the same functions provided by the servicer of a residential mortgage loan. Additionally, the underlying transaction occurred between the Department of Education and Santagate; there was not a contractual relationship between PHEAA and Santagate. *See Powers v. Green Tree Servicing, L.L.C.*, 8th Dist. No. 102753, 2015-Ohio-3355, ¶ 15 (reasoning "[t]he holding in *Anderson* that the servicing of a mortgage was not a consumer transaction was largely based on a lack of a contractual relationship between the servicer and the consumer and the fact that the interaction between the servicer and consumer did not have any of the hallmarks of an exchange"). Thus, we find that the Supreme Court's decision in *Anderson* applies to student loan servicers. It follows, then, that PHEAA is not a "supplier" within the meaning of the CSPA, and that student loan servicing is not a "consumer transaction" within the meaning of the CSPA. Accordingly, the trial court did not err in granting PHEAA's motion to dismiss Santagate's CSPA claim. We overrule his first assignment of error.

## V. Second Assignment of Error – Privity of Contract

{¶ 18} In his second assignment of error, Santagate argues the trial court erred in concluding there exists no privity of contract between Santagate and PHEAA.

{¶ 19} To succeed on a claim of breach of contract, a plaintiff must demonstrate (1) the existence of a contract, (2) plaintiff's performance, (3) defendant's breach, and (4) damages or loss to the plaintiff. *Thyssen Krupp Elevator Corp. v. Constr. Plus, Inc.*, 10th Dist. No. 09AP-788, 2010-Ohio-1649, ¶ 13, citing *Jarupan v. Hanna*, 173 Ohio App.3d 284, 2007-Ohio-5081, ¶ 18 (10th Dist.). However, " 'a contract is binding only upon parties to a contract and those in privity with them.' " *Thyssen Krupp Elevator Corp* at ¶ 13, quoting *Samadder v. DMF of Ohio, Inc.*, 154 Ohio App.3d 770, 2003-Ohio-5340, ¶ 25 (10th Dist.).

{¶ 20} Generally, privity is "[t]he connection or relationship between two parties, each having a legally recognized interest in the same subject matter." *Shoemaker v. Gindlesberger*, 118 Ohio St.3d 226, 2008-Ohio-2012, ¶ 10; *Hahn v. Satullo*, 156 Ohio App.3d 412, 2004-Ohio-1057, ¶ 65 (10th Dist.). Santagate argues the trial court erred in finding he is not a party to the servicing contract between the Department of Education and PHEAA and that Santagate is not in privity with the Department of Education or PHEAA on the servicing contract.

{¶ 21} Despite Santagate's attempts to categorize the three-way relationship between Santagate, the Department of Education, and PHEAA as one that necessarily suggests privity on the servicing contract, we agree with the trial court that Santagate is not a party to the servicing contract between the Department of Education and PHEAA and that Santagate is not in privity with the Department of Education or PHEAA on the servicing contract. *See Thyssen Krupp Elevator Corp.* at ¶ 13 (a party cannot maintain a breach of contract action against an entity not a party to the contract at issue). Further, while the note itself references the role of DLSC, the prior loan servicer, nothing in the language of the note indicates that the loan servicer is a party to the note. Although there are multiple agreements here related to Santagate's student loan, the presence of these separate agreements does not give the parties of one agreement privity with the parties on the other agreement. *See, e.g., State v. Harding*, 10th Dist. No. 13AP-362, 2014-Ohio-1187, ¶ 29 (rejecting an argument that contractual privity exists simply because the parties are both subject to separate contracts that are part of the same loan transaction, noting that "relationship does not allow defendants to sue or be sued on contracts * * * to which they are not parties but [the other entity] is").

{¶ 22} Having reviewed the pleadings and the materials submitted in support of PHEAA's motion for summary judgment, we conclude that Santagate is not in privity with the Department of Education and PHEAA on the servicing contract. Thus, we overrule Santagate's second assignment of error.

## VI. Third Assignment of Error – Third-Party Beneficiary

{¶ 23} In his third assignment of error, Santagate argues the trial court erred in concluding he is not an intended third-party beneficiary of the servicing contract between the Department of Education and PHEAA.

{¶ 24} Generally, "only an intended beneficiary may exert rights to a contract of which he is not a party." *TRINOVA Corp. v. Pilkington Bros., P.L.C.*, 70 Ohio St.3d 271, 277 (1994); *Grant Thorton v. Windsor House, Inc.*, 57 Ohio St.3d 158, 161 (1991) ("[o]nly a party to a contract or an intended third-party beneficiary of a contract may bring an action on a contract in Ohio"). A third-party beneficiary, while not a party to a contract, is " 'one for whose benefit a promise has been made in a contract.' " *Maghie & Savage, Inc. v. P.J. Dick Inc.*, 10th Dist. No. 08AP-487, 2009-Ohio-2164, ¶ 40, quoting *Chitlik v. Allstate Ins. Co.*, 34 Ohio App.2d 193, 196 (8th Dist.1973). "While an intended third-party beneficiary 'has enforceable rights under a contract, an incidental third-party beneficiary does not.' " *State ex rel. DeWine v. Mastergard*, 10th Dist. No. 14AP-1024, 2016-Ohio-660, ¶ 10, quoting *Maghie & Savage, Inc.* at ¶ 40.

{¶ 25} For a third party to acquire intended beneficiary status, it must present evidence that the promisee intended to directly benefit the third party. *Huff v. FirstEnergy Corp.* 130 Ohio St.3d 196, 2011-Ohio-5083, ¶ 11; *TRINOVA Corp.* at 277-78; *Hill v. Sonitrol of Southwestern Ohio, Inc.*, 36 Ohio St.3d 36, 40 (1988). A third party who receives a mere happenstance benefit from the promisee's performance of a contract is only an incidental beneficiary, to whom the promise owes no duty. *Hill* at 40.

{¶ 26} "Private citizens generally do not have the right to enforce government contracts as a third-party beneficiary on their own behalf, unless a different intention is clearly manifested in the contract." *Walker v. Jefferson Cty.*, 7th Dist. No. 02 JE 14, 2003-Ohio-3490, ¶ 40, citing *Doe v. Adkins*, 110 Ohio App.3d 427, 436 (4th Dist.1996). *See also Mastergard* at ¶ 22 (noting the "general contract principle that third party beneficiaries of a government contract generally are assumed to be merely incidental beneficiaries, and may not enforce the contract absent clear intent to the contrary"), citing *Hodges v. Pub. Bldg. Comm.*, 864 F.Supp. 1493, 1509 (N.D. Ill.1994). "It is not necessary for the third party to be expressly identified in the contract, however, the contract must have been made and entered into with the intent to benefit that individual." *Bungard v. Dept. of Job & Family Servs.*, 10th Dist. No. 07AP-447, 2007-Ohio-6280, ¶ 23. The parties' intention to benefit a third party will generally be found in the language of the agreement. *Graham v. Lakewood*, 8th Dist. No. 106094, 2018-Ohio-1850, ¶ 53, citing *Huff* at ¶ 12.

{¶ 27} Though Santagate argues the servicing contract is not a government contract, we agree with the trial court's conclusion that the servicing contract is, indeed, a government contract, as the Department of Education is a government agency. Thus, to determine whether the servicing contract manifested an intent that a private citizen could enforce it as a third-party beneficiary, we must review the language of the contract.

{¶ 28} Upon review of the servicing contract, we conclude the contract between the Department of Education and PHEAA does not contain any language expressing a clear intention that any specific borrowers would have a right to enforce the terms of the servicing contract against PHEAA. While Santagate continues to argue, as he did in the trial court, that he is affected by the servicing contract, he cannot overcome the lack of clear intention that he have any enforceable rights under the servicing contract. He is, at best, an incidental beneficiary to the servicing contract. *See Long v. Mount Carmel Health Sys.*, 10th Dist. No. 16AP-511, 2017-Ohio-5522, ¶ 16.

{¶ 29} Accordingly, we conclude the trial court did not err in granting summary judgment to PHEAA on Santagate's breach of contract claim because Santagate is not an intended third-party beneficiary under the servicing contract. We overrule Santagate's third assignment of error.

## VII. Fourth Assignment of Error – Breach of Fiduciary Duty

{¶ 30} In his fourth assignment of error, Santagate argues the trial court erred in dismissing his claim for breach of fiduciary duty. More specifically, Santagate asserts the trial court erred in finding no special relationship existed between himself and PHEAA sufficient to create a fiduciary duty.

{¶ 31} In order to prevail on claim for breach of fiduciary duty, a plaintiff must demonstrate: (1) the existence of a duty arising from a fiduciary relationship, (2) the defendant's failure to observe the duty, and (3) an injury proximately resulting from the breach. *Cristino v. Admr., Ohio Bur. of Workers' Comp.*, 10th Dist. No. 12AP-60, 2012-Ohio-4420, ¶ 16, citing *Wells Fargo Bank, N.A. v. Sessley*, 188 Ohio App.3d 213, 2010-Ohio-2902, ¶ 36 (10th Dist.). " 'When there is no fiduciary relationship between the parties, a breach-of-fiduciary-duty claim necessarily fails.' " *Cristino* at ¶ 16, quoting *Wells Fargo Bank* at ¶ 36.

{¶ 32} The Supreme Court of Ohio has defined a fiduciary relationship as a relationship " 'in which special confidence and trust is reposed in the integrity and fidelity of another and there is a resulting position of superiority or influence, acquired by virtue of this special trust.' " *Groob v. KeyBank*, 108 Ohio St.3d 348, 2006-Ohio-1189, ¶ 16, quoting *In re Termination of Emp. of Pratt*, 40 Ohio St.2d 107, 115 (1974). "A fiduciary is an entity that has a duty, created by its undertaking, to act primarily for the benefit of another in matters connected with its undertaking." *Cristino* at ¶ 17, citing *State v. Massien*, 125 Ohio St.3d 204, 2010-Ohio-1864, ¶ 35.

{¶ 33} Ordinarily, a business transaction in which the parties deal at arm's length will not create a fiduciary relationship. *Hoyt v. Nationwide Mut. Ins. Co.*, 10th Dist. No. 04AP-941, 2005-Ohio-6367, ¶ 30. However, "[a] fiduciary relationship can be created by a formal agreement or may arise de facto from an informal relationship if both parties understand that a special trust or confidence has been reposed." *Id.*, citing *Umbaugh Pole Bldg. Co. v. Scott*, 58 Ohio St.2d 282 (1979), syllabus.

{¶ 34} Because the trial court dismissed Santagate's breach of fiduciary duty claim pursuant to Civ.R. 12(B)(6), we must look to the complaint to see if Santagate sufficiently pled facts to establish the existence of a fiduciary relationship between Santagate and PHEAA. Although Santagate states several times throughout the complaint that he placed trust and confidence in PHEAA, Santagate failed to make any allegation that PHEAA understood that Santagate held such trust or confidence in it. *Hoyt* at ¶ 31 (noting a de facto fiduciary relationship "can only be created where both parties understand that a special trust or confidence has been reposed," but appellant made no factual allegation that the entity intended to create such a relationship between himself and appellant, "regardless of Hoyt's unilateral understanding of their relationship"). *See also Groob* at ¶ 21 (noting that parties stand at arm's length when negotiating the terms and conditions of a consumer loan, so, absent an understanding *by both parties* that a special trust and confidence has been created, no fiduciary duty results); *Belvedere Condominium Unit Owners' Assn. v. R.E. Roark Companies*, 67 Ohio St.3d 274, 284 (1993) (holding that "a condominium owners' association may not maintain an action against a condominium developer for breach of fiduciary duty absent an understanding *by both parties* that special trust and confidence have been reposed in the developer") (emphasis added). Moreover, the

complaint contains numerous statements evincing that Santagate understood PHEAA worked for the Department of Education and not for him. Stated another way, though Santagate attempts to make the legal assertion that he had a fiduciary relationship with PHEAA, he did not plead any facts in the complaint demonstrating that his relationship with PHEAA was anything other than an arm's length relationship. *Groob* at ¶ 26.

{¶ 35} Because Santagate failed to plead facts sufficient to demonstrate the existence of a fiduciary relationship between himself and PHEAA, the trial court did not err in dismissing his claim for breach of fiduciary duty. We overrule Santagate's fourth assignment of error.

## VIII. Fifth Assignment of Error – Fraud-Based Claims

{¶ 36} In his fifth assignment of error, Santagate argues the trial court erred in dismissing his claims for fraud, fraudulent representation, and/or fraudulent concealment.

{¶ 37} To prevail on a fraud claim, "a plaintiff must prove: (1) a representation, or if a duty to disclose exists, concealment of a fact, (2) that is material to the transaction at issue, (3) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (4) with the intent to mislead another into relying on it, (5) justifiable reliance upon the representation or concealment, and (6) a resulting injury proximately caused by the reliance." *Andrew v. Power Marketing Direct, Inc.*, 10th Dist. No. 11AP-603, 2012-Ohio-4371, ¶ 49, citing *Burr v. Stark Cty. Bd. of Commrs.*, 23 Ohio St.3d 69, 73 (1986).

{¶ 38} The trial court determined dismissal of Santagate's fraud-based claims was warranted both because of the economic loss rule and the Higher Education Act ("HEA"). Generally, the economic loss rule prevents recovery in tort of damages for purely economic loss. *Clemens v. Nelson Fin. Group, Inc.*, 10th Dist. No. 14AP-537, 2015-Ohio-1232, ¶ 34, citing *Corporex Dev. & Constr. Mgt., Inc. v. Shook, Inc.*, 106 Ohio St.3d 412, 2005-Ohio-5409, ¶ 6. "The economic-loss rule stems from the principle that, '[i]n the absence of privity of contract between two disputing parties the general rule is "there is no * * * duty to exercise reasonable care to avoid intangible economic loss or losses to others that do not arise from tangible physical harm to persons and tangible things." ' " *Waverly City School Dist. Bd. of Edn. v. Triad Architects, Inc.*, 10th Dist. No. 08AP-329, 2008-Ohio-6917, ¶ 26,

quoting *Floor Craft Covering, Inc. v. Parma Community Gen. Hosp. Assn.*, 54 Ohio St.3d 1, 3 (1990), quoting Prosser & Keeton, Law of Torts, Section 92, 657 (5th Ed.1984).

{¶ 39} There are exceptions, however, to the application of the economic loss rule to bar recovery in tort of purely economic loss. "A plaintiff may pursue such a tort claim if it is 'based exclusively upon [a] discrete, preexisting duty in tort and not upon any terms of a contract or rights accompanying privity.' " *Clemens* at ¶ 36, quoting *Corporex* at ¶ 9. These types of exempt claims may include negligent misrepresentation, breach of fiduciary duty, fraud, and conversion. *Clemens* at ¶ 36, citing *Potts v. Safeco Ins. Co.*, 5th Dist. No. 2009 CA 0083, 2010-Ohio-2042, ¶ 21, and *Morgan v. Mikhail*, 10th Dist. No. 08AP-87, 2008-Ohio-4598, ¶ 69.

{¶ 40} Despite the exemption of a fraud claim from the economic loss rule, PHEAA argues, and the trial court found, that dismissal of Santagate's fraud-based claims were still appropriate because of the HEA. The student assistance portions of the HEA, codified at 20 U.S.C. 1070-1100, govern federal student loans. Significantly, the HEA does not create a private right of action. *Thomas M. Cooley Law School v. The Am. Bar Assn.*, 459 F.3d 705, 710 (6th Cir.2006) (noting "nearly every court to consider the issue in the last twenty-five years has determined that there is no express or implied private right of action to enforce any of the HEA's provisions"), citing *McCulloch v. PNC Bank Inc.*, 298 F.3d 1217, 1221 (11th Cir.2002).

{¶ 41} Here, PHEAA argues the HEA precludes Santagate's claims even though he attempted to plead them as fraud-based claims. In support, PHEAA relies on several federal district court cases in which fraud-like claims were dismissed because, despite how they were pled, they were really claims for violations of the HEA. *See Salerno v. Am. Edn. Servs.*, M.D. Pa. No. 3:13-CV-1549, 2013 U.S. Dist. LEXIS 159172 (Oct. 3, 2013) (dismissing complaint on the grounds that the allegations related to interest accrual and penalties, as well as excessive collection calls, asserted violations of the HEA rather than separate tort actions); *Carter v. U.S. Dept. of Edn.*, N.D. Ill. No. 01 C 757, 2001 U.S. Dist. LEXIS 17365 (Oct. 23, 2001) (dismissing complaint on grounds that the allegations that the Department of Education "negligently or deliberately wronged" the plaintiff in the calculation of his student loan debt and interest asserted violations of the HEA).

{¶ 42} In particular, PHEAA relies on *Nehorai v. U.S. Dept. of Edn. Direct Loan*, E.D.N.Y. No. 08-CV-920, 2008 U.S. Dist. LEXIS 30161 (Apr. 14, 2008). In *Nehorai*, the federal district court dismissed a complaint from a borrower who alleged the Department of Education misled her about her eligibility for student financial aid. Although the borrower did not identify any federal law, the court in *Nehorai* nonetheless construed the complaint as attempting to assert a claim under the HEA and dismissed the complaint. *Id*. Here, the trial court agreed with PHEAA's reliance on *Nehorai* and found that Santagate's complaint, despite purporting to assert fraud-based claims, was actually asserting a claim arising under the HEA for which there is no private cause of action.

{¶ 43} However, despite PHEAA's and the trial court's reliance on *Nehorai*, other more recent federal cases have concluded that the HEA does not expressly preempt state law claims for fraud brought against a federal student loan servicer. Specifically, the United States Court of Appeals for the Eleventh Circuit recently held that the HEA neither expressly nor implicitly preempts state law claims for fraud based on a student loan servicer's affirmative misrepresentations. *Lawson-Ross v. Great Lakes Higher Edn. Corp.*, 955 F.3d 908, 911, 919-20 (11th Cir.2020) (concluding the HEA did not preempt state law claims related to borrowers' allegation that their federal student loan servicer "made affirmative misrepresentations to them and other borrowers that they were on track to have their student loans forgiven based on their public-service employment when, in fact, their loans were ineligible for the forgiveness program," and specifically noting the Department of Education had encouraged borrowers to consult their loan servicers for repayment options). In *Lawson-Ross*, the Eleventh Circuit made the important distinction that while the HEA would preempt a state law claim based on a *misleading disclosure* of information that a federal student loan servicer was required to disclose under the HEA and accompanying federal regulations, the HEA would not preempt state law claims for *affirmative misrepresentations* made on a matter on which the student loan servicer had no required disclosure under the HEA. *Id*. at 919-20.

{¶ 44} Similarly, the United States Court of Appeals for the Seventh Circuit recently held that the HEA did not preempt a student loan borrower's state law claims that a federal student loan servicer made affirmative misrepresentations to the borrower while counseling her on her repayment plan options. *Nelson v. Great Lakes Educational Loan*

*Servs., Inc.*, 928 F.3d 639, 642 (7th Cir.2019) (noting the distinction between affirmative misrepresentations and failures to disclose). The Seventh Circuit in *Nelson* specifically noted that the HEA and accompanying regulations impose specific disclosure obligations on student loan servicers and preempt state law claims based on those disclosures. Thus, the Seventh Circuit clarified that a student loan borrower "may proceed on her claims based on affirmative misrepresentations, as distinct from those that require proof that defendant failed to disclose information." *Nelson* at 650.

{¶ 45} We find the reasoning employed by the Eleventh Circuit and the Seventh Circuit to be persuasive. Thus, based on both *Lawson-Ross* and *Nelson*, we disagree with the trial court's conclusion that the HEA necessarily preempts any fraud claim brought by a student loan borrower against a federal student loan servicer. Pursuant to the Seventh Circuit's decision in *Nelson* and the Eleventh Circuit's decision in *Lawson-Ross*, to the extent Santagate alleged that PHEAA made affirmative misrepresentations to him in counseling him on his repayment options, the HEA would not operate to bar those claims. In his complaint, Santagate alleges PHEAA made affirmative misrepresentations that he relied upon to his detriment. Because we must construe Santagate's factual allegations as true for purposes of a Civ.R. 12(B)(6) motion to dismiss, we find the trial court erred in granting PHEAA's motion to dismiss the fraud-based claims based on PHEAA's affirmative misrepresentations. We, therefore, sustain Santagate's fifth assignment of error.

## IX. Sixth Assignment of Error – Unjust Enrichment

{¶ 46} In his sixth and final assignment of error, Santagate argues the trial court erred in dismissing his claim for unjust enrichment.

{¶ 47} "The doctrine of unjust enrichment 'applies when a benefit is conferred and it would be inequitable to permit the benefitting party to retain the benefit without compensating the conferring party.' " *Garb-Ko v. Benderson*, 10th Dist. No. 12AP-430, 2013-Ohio-1249, ¶ 25, quoting *Meyer v. Chieffo*, 193 Ohio App.3d 51, 2011-Ohio-1670, ¶ 16 (10th Dist.). To prove an unjust enrichment claim, a plaintiff must demonstrate (1) the plaintiff conferred a benefit upon the defendant, (2) the defendant knew of the benefit, and (3) it would be unjust to allow the defendant to retain the benefit without repayment to the plaintiff. *Garb-Ko* at ¶ 25, citing *Meyer* at ¶ 37, citing *Maghie & Savage, Inc. v. P.J. Dick*

*Inc.* at ¶ 33. Santagate alleges he improperly overpaid due to PHEAA placing his loans in forbearance and, as a result, PHEAA was unjustly enriched.

{¶ 48} It is clear from the face of the complaint that PHEAA does not receive any funds from Santagate. Instead, as the trial court noted and as we have previously concluded, PHEAA's contractual relationship is with the Department of Education. Thus, the only entity potentially "enriching" PHEAA is the Department of Education, a non-party to this action. Because Santagate did not allege facts sufficient to demonstrate, if true, that he conferred a benefit upon PHEAA, the trial court did not err in granting PHEAA's motion to dismiss the claim for unjust enrichment. We overrule Santagate's sixth and final assignment of error.

## X. Disposition

{¶ 49} Based on the foregoing reasons, the trial court did not err in granting PHEAA's motion for summary judgment on Santagate's breach of contract claim based on a theory of third-party beneficiary, in concluding Santagate was not in privity with PHEAA, or in dismissing Santagate's claims for violation of the CSPA, breach of fiduciary duty, and unjust enrichment. However, the trial court erred in granting PHEAA's motion to dismiss Santagate's fraud-based claims that alleged affirmative misrepresentations by PHEAA. Having sustained Santagate's fifth assignment of error and having overruled Santagate's first, second, third, fourth, and sixth assignments of error, we affirm in part and reverse in part the judgment of the Franklin County Court of Common Pleas, and we remand the matter to that court for further proceedings consistent with this decision.

*Judgment affirmed in part and reversed in part; cause remanded.*

BROWN, J., concurs.
Nelson, J., concurs in part and dissents in part.

NELSON, J., concurring in part and dissenting in part.

{¶ 50} I agree with the majority that the trial court did not err in finding that Mr. Santagate was not in privity with PHEAA, in granting summary judgment against his contract claim, and in dismissing his CSPA, breach of fiduciary duty, and unjust enrichment claims. I also agree with what I understand to be the majority's view that even under the rubric of fraud, Mr. Santagate cannot pursue against PHEAA claims based on the terms of

the Notes or the commands of the Higher Education Act. And I agree with the majority that in this context, any fraud claims must be limited to "*affirmative misrepresentations* made on a matter on which the student loan servicer had no required disclosure under the HEA" (as opposed, we are told, to "*misleading disclosure* of information that a federal loan servicer was required to disclose," or to a failure to disclose information); Mr. Santagate's fraud claims must be confined to allegations of "affirmative misrepresentations that he relied upon to his detriment." *See* Majority Decision at ¶ 43-45 (emphasis in original).

{¶ 51} So I agree with what the majority has ruled out. I diverge from the majority only because, after all that, I don't think there's anything left to Mr. Santagate's complaint. His "fraudulent concealment" allegations, for example, go by the boards, in that they don't allege "affirmative misrepresentations." That excluded category encompasses his concerns that the loan servicer "intentionally does not provide new total monthly amounts in disclosure statements to borrowers," Complaint at ¶ 66, that its representatives "did not mention any other repayment plan options," *id.* at ¶ 70, that it "intentionally withheld information," *id.* at ¶ 73, *see also, e.g., id.* at ¶ 76 ("[a]s a result of [the servicer's] intentional withholding of repayment option information * * *, Plaintiff's Loans have been subject to higher interest rates and increased total amounts due and owing"), *id.* at ¶ 111 ("intentionally withheld accounting information"), or that it "intentionally delayed review and processing," *id.* at ¶ 81, and the like.

{¶ 52} Similarly, Mr. Santagate's assertion that PHEAA misrepresented its agents as "fully versed in repayment options," *id.* at ¶ 190, requires some additional claim of misconduct to state a fraud claim and, lacking some link to "affirmative misrepresentations" leading to damage, cannot be used to smuggle in recovery here on the "concealment" or "failure to disclose" claims. His assertions regarding PHEAA "representations on forbearance," as the trial court noted, fail to make out a fraud claim because his complaint explicitly disclaims that he acted in reliance on any such statements: he "took no action to place his Loans into forbearance before, during, or after the September 30, 2013 Discussion and did not direct [PHEAA] to place his Loans into forbearance." *Id.* at ¶ 87; *see also id.* at ¶ 88 (alleging that PHEAA "unilaterally, and without Plaintiff's consent, placed Plaintiff's Loans into forbearance"). His allegation of a PHEAA "promise that Plaintiff was receiving [an] EDA Rebate," *id.* at ¶ 190, falls prey to his

allegations that the notes called for such a rebate and that the alleged "assurances" came not from PHEAA but "from the Direct Loan Servicing Center," a different entity, *see id.* at ¶ 15, 51-52. His allegations that PHEAA told him during conversations of November 4 and 21, 2013, and again in conversations of January 6 and 21, 2014, that he would receive "additional information" or an "accounting breakdown" of accrued interest, *see id.* at ¶ 103, 105, 116, 117, are matched by allegations that "[o]n November 27, 2013 [PHEAA] mailed to Plaintiff what it considered to be the full accounting of Plaintiff's Loans requested by Plaintiff" and that it did the same in a "Second Accounting" on January 27, 2014, *see id.* at ¶ 108, 118. These are not allegations of "affirmative misstatements" that give rise to a fraud claim outside of HEA dictates.

{¶ 53} There are other examples, but in sum, I find no sufficiently pleaded allegations of "affirmative representations" that Mr. Santagate says he relied on to his detriment that fall outside the purview of the federal HEA and that come within the very narrow subclass of fraud claims on which the court majority says he may proceed. It is not dispositive, but I think it is telling, that Mr. Santagate identifies no such particular affirmative representations in the portions of his opening brief here or of his reply that address his fifth assignment of error and the trial court's handling of his fraud allegations. *See* Appellant's Brief at 43-48 (not citing any paragraph of his complaint); Reply Brief at 13-18. Mr. Santagate submits that he "sufficiently alleges fraud" because he relied on PHEAA to "(i) provide all repayment plan options, (ii) maintain and provide full and accurate accountings of his Loans, (iii) apply payments in a way that minimizes amounts owed, (iv) not increase interest rates in violation of the terms of the Notes, (v) investigate charges PHEAA admitted should not have been applied, and (vi) not put him in forbearance when they said they would not." Reply Brief at 14-15. Item (vi) does not track the allegations of paragraphs 85-96 of his complaint (reciting no reliance), and the first five items he lists relate to information allegedly withheld or to actions taken or not taken rather than to "affirmative misrepresentations."

{¶ 54} I think that the trial court was correct in dismissing Mr. Santagate's fraud claim in its entirety, not just to some very substantial degree. I therefore would affirm the

judgment of the trial court in full, and I respectfully dissent from the majority's decision to the limited extent that it reverses the trial court's judgment.   I otherwise concur in the decision of this court.

———————————————